IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02555-PAB-TPO

TERANCE DEJUAN WILSON,

     Plaintiff,

v.

MOSES STANCIL, Executive Director of CDOC,
MENTAL HEALTH (Unknown Supervisor),
LONG, SCF Warden,
WALLACE, SCF Sergeant,
MARKHAM, SCF Sergeant,
WEAVER, SCF Sergeant,
QUINLAN, SCF Lieutenant,
REED, SCF Sergeant, and
NORRIS, SCF Correctional Officer,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Timothy P. O'Hara, United States Magistrate Judge.**

Before the Court is the Colorado Department of Corrections (CDOC) Defendants'[1] Partial Motion to Dismiss Wilson's Amended Complaint at ECF 19 [ECF 41]. The CDOC Defendants' Motion was referred to this Court for recommendation by Chief District Judge Philip A. Brimmer. ECF 42.

---

[1] The CDOC Defendants include Moses Andre Stancil, Jeff Long, Karissa Weaver, David Reed, Jason Wallace, Jeffrey Quinlan, and Shannon Norris. ECF 41. Plaintiff's claim against the CDOC was dismissed on June 13, 2024. ECF 25. Defendants "Mental Health (Unknown Supervisor)" and Markham have not yet been served, and no appearance has been filed on either Defendant's behalf.

The Court has carefully considered the CDOC Defendants' Motion to Dismiss, Plaintiff's "Reply" [ECF 43], CDOC Defendants' Reply [ECF 44], the entire case file, and the applicable case law in issuing this Report and Recommendation. The Court finds that oral argument will not materially assist in adjudicating the Motion. Based upon the record herein, the Court respectfully recommends the Motion be **GRANTED**.[2]

## FACTUAL BACKGROUND[3]

*Attack on April 12, 2022*

On or about April 12, 2022, Plaintiff was an inmate at the Sterling Correctional Facility in Canon City, Colorado. On that date, while he was chained to a table in the center of the day room, he was attacked by another inmate who used "handcuffs, chains, and a steel lock" to beat him. ECF 19 at p. 7. As a result of the attack, Plaintiff suffered "severe head trauma, contusions and abrasions, cuts to neck and head, and concussion, whiplash, and resulting arthritis in [the] cervical area of [the] neck," causing permanent nerve damage. *Id.* The attack also caused "serious physical, cognitive, emotional, [and] psychological injuries." *Id.*

The TAC is murky on the incidents preceding the attack. Immediately before it, Plaintiff alleged that Defendants Reed (a sergeant) and Norris (a correctional officer), who "were aware that specific inmates were threatening to assault the plaintiff and [were] asking for their[4]

---

[2] To date, Plaintiff has not identified the unknown Mental Health Supervisor and neither that individual or Defendant Markham has been served or has answered Plaintiff's TAC. As a result, CDOC Defendants' Motion to Dismiss [ECF 41] does not pertain to the claims against them.

[3] The Factual Background section is derived from Plaintiff's Third Amended Complaint (TAC). ECF 19.

[4] It is unclear from Plaintiff's TAC to whom "their" in this context refers. The Court cannot discern whether Plaintiff is alleging that the inmates were asking Defendants Reed and Norris for assistance or that Defendants Reed and Norris were asking for these specific inmates' assistance. Plaintiff then alleges that Defendants Reed and Norris "set the plaintiff up." ECF 19 at p. 8.

assistance," asked him if he wanted to "stay out at table time."[5] *Id.* at p. 8. Defendants Norris and Reed assured Plaintiff that a certain inmate was not coming out of his cell. *Id.* Plaintiff opted to remain outside of his cell and informed the two Defendants that "he couldn't sit with the inmate."[6] *Id.* Although Plaintiff was asking to sit alone, Defendants Reed and Norris "forced[7] plaintiff" to sit with white supremacists for "table time."

Then, the two Defendants returned to the cell of the inmate previously discussed with Plaintiff, someone "who intended to injure plaintiff," and they let the inmate out and led him to the table where Plaintiff sat. This inmate took the opportunity to beat Plaintiff with "steel weapons" until Plaintiff lost consciousness. *Id.* Before he lost consciousness, Plaintiff heard Defendant Norris state "that's what you get." *Id.*

In his TAC, Plaintiff used multiple, conclusory, statements to describe the actions of the Defendants as a group. For example, Plaintiff alleged that all Defendants "failed to protect me, instituted a policy that caused the attack, spread rumors and relayed confidential information from inmates' files to other inmates in violation of CDOC policy." *Id.* Plaintiff also alleged that Defendants "inadequately supervised with inappropriate & unsafe housing designations, and created an environment rife with violence, extortion, drugs, and weapons where there's a culture

---

[5] The Court presumes that Plaintiff means that he had a decision to stay out of his cell (and sit at a table) as opposed to return to his cell.

[6] Plaintiff never explains the danger this inmate posed, nor does he explicitly allege whether Defendants Reed and Norris were aware of such a danger.

[7] Plaintiff uses the word "forced" to describe the actions of Defendants Reed and Norris, but the Court reads it to mean that they "forced" him to decide between remaining at the table next to two other inmates or returning to his cell. ECF 19 at p. 8. Although he wanted to remain there alone, Defendants apparently would not permit that.

of deprivation and a lack of motive to do well, constituting a clear and probable danger to institutions [sic] security." *Id.* at p. 8.

Plaintiff also alleged, again generally and in conclusory fashion, that he was in danger. First, all Defendants "spread a rumor that the plaintiff was a 'snitch'" *Id.* at p. 7. Also, Plaintiff "was already being targeted by white-supremacists and surenos for 10 years." *Id.* In addition, several Defendants, including Reed, Norris, Weaver, Quinlin, and Markham, "were aware that specific inmates were threatening to assault the plaintiff and asking for their assistance as each of these defendants continued to spread the rumors and promulgate the assault." *Id.* at p. 8. Without any explanation or context, Plaintiff labels the inmate who attacked him as "the inmate who intended to harm him."[8] *Id.*

*Retaliation – April to August of 2022*[9]

Following the assault, Plaintiff alleged that Defendants "began a campaign of retaliatory harassment to deter plaintiff's first amendment, and to destroy evidence grievances and plaintiff's legal work." *Id.* at p. 9. Specifically, Plaintiff alleges that Defendants Long and Wallace "signed off to have Wilson violently assaulted while in his cell for filing grievances . . ." *Id.* Defendants Markham, Weaver, Quinlin, Reed and Norris "each first threatened plaintiff for continuing to file grievances and complaining and attempted to deter him from using his legal remedies by various assaults." *Id.*

---

[8] Of importance to this Motion, Plaintiff fails to explain whether he informed Defendants Norris and Reed that the individual intended to harm him. *Id.*

[9] Since Defendants' Motion only seeks dismissal of this claim as it related to Defendant Long, *see* ECF 41 at p. 3 n.2, the Court focuses the factual summary on allegations relevant to the Retaliation claim against Defendant Long.

Once again, Plaintiff relied on conclusory statements to support this claim. For example, Plaintiff alleged "[t]he defendants already knew plaintiff was being targeted, Quinlin, Reed Weaver, Norris, [and] Wallace subjected the plaintiff to violent attacks, as did defendant Markham." *Id.* at p. 9. Next, Plaintiff stated "Administration[,] without due process[,] subjected plaintiff to property damage, theft, loss, and wouldnt [sic] even allow plaintiff to use a pen or file grievance, without assaulting him." *Id.* Finally, Plaintiff alleges generally that "[e]ach defendant named under this claim for relief committed acts described in this complaint that were motivated by retaliation for protected activity by plaintiff as set forth in the general allegations." *Id.*

## LEGAL BACKGROUND

*Multiple Amendments of Complaint*

On September 29, 2023, Plaintiff filed his original Complaint. ECF 1. On October 11, 2023, U.S. Magistrate Judge Susan Prose issued an Order to Show Cause, noting that Plaintiff "has combined in a single action various constitutional claims against Defendants at different CDOC facilities that do not appear to be properly joined together." ECF 6 at p. 2. Magistrate Judge Prose ordered Plaintiff to "show cause within thirty (30) days from the date of this order why the misjoined parties in this action should not be dismissed or the claims against them severed." *Id.* at p. 2.

In his Response, Plaintiff requested "to split the complaint into two actions, one against the CDOC's BVCF for those instances complained of, and SCF for the incidents in the Complaint in their regard . . ." ECF 7 at p. 2. Plaintiff also requests that five additional defendants be added: CDOC, Dean Williams, Intelligence Agent White, Intelligence Agent Johnson, and Intelligence Agent Hagans. *Id.* Magistrate Judge Prose subsequently severed the claims, ordering that the

claims against the "BCVF Defendants" be severed and provide the basis for a separate lawsuit. ECF 8 at p. 4.

In the Order severing claims and directing Plaintiff to file an amended complaint, Magistrate Judge Prose explained the issues with Plaintiff's claims in the original Complaint. ECF 8. The claims against Defendants in their official capacities were "barred by Eleventh Amendment immunity." *Id*. at p. 5 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Johns v. Stewart*, 57 F.3d 1544, 1554 (10th Cir. 1995); *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988)). Plaintiff's claims for injunctive relief "are moot because Plaintiff is no longer incarcerated at SCF." *Id.* (citing *Mitchell v. Estrada*, No. 05-1476, 225 F. App'x 737, 741 (10th Cir. Feb. 15, 2007)). Magistrate Judge Prose also outlined the general contours of Eighth Amendment, Retaliation, and Equal Protection Claims. *Id.* at pp. 6-9. And, importantly as it relates to the present motion, Magistrate Judge Prose also informed Plaintiff of the requirement that defendants must have "personally participated in a deprivation of constitutional rights." *Id.* at p. 9 (citing *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (citation omitted)). Magistrate Judge Prose then "directed [Plaintiff] to file an amended Prisoner Complaint with the above legal standards in mind." *Id.* at p. 10.

On December 15, 2023, Plaintiff filed his First Amended Complaint (FAC). ECF 12. On February 1, 2023, Magistrate Judge Prose issued an Order relating to Plaintiff's FAC. Once again, Magistrate Judge Prose found that Plaintiff's Claims against the CDOC are barred by the Eleventh Amendment. ECF 14 at p. 3. As to Plaintiff's Eighth Amendment claim, construing it as an excessive force claim only, Magistrate Judge Prose found that "Plaintiff does not allege specific facts in the [FAC] to show any of the named Defendants used excessive force against him during the relevant time period." *Id.* at p. 6. Also, the allegations against the "unknown mental health

supervisor" are "vague and conclusory." *Id.* Plaintiff's Equal Protection claim contained "vague and conclusory" allegations. *Id.* at p. 7. However, Plaintiff's Unconstitutional Retaliation claim contained "specific facts . . . to suggest unconstitutional retaliation by Defendants Quinlin, Weaver, Markham, Reed, Norris, and Wallace."[10] *Id.* at p. 8 (citing ECF 12 at p. 8). After reiterating to Plaintiff the pleading requirements under Fed. R. Civ. P. 8, Magistrate Judge Prose ordered Plaintiff to file a Second Amended Complaint. *Id.* at p. 9.

On March 4, 2024, Plaintiff filed the Second Amended Complaint (SAC).[11] ECF 16. Once again, Magistrate Judge Prose issued an Order addressing Plaintiff's pleading. ECF 18. Magistrate Judge Prose noted that § 1983 claims against Defendants in their official capacities seeking monetary or declaratory relief are barred by the Eleventh Amendment but claims for injunctive relief against Defendant Williams in his official capacity are not. *Id.* at p. 4. Plaintiff's Eighth Amendment claims lacked "specific facts to show each named Defendant's personal involvement in a deprivation of his Eighth Amendment rights." *Id.* at p 7. Plaintiff's Retaliation claim was sufficient as to Defendants Quinlin, Weaver, Markham, Reed, Norris, and Wallace, but insufficient as to Defendant Long due to Plaintiff's vague and conclusory allegations. *Id.* at p. 8. Magistrate Judge Prose ordered Plaintiff to file a "third and final amended Prisoner Complaint," reminding Plaintiff that he "may not incorporate by reference facts alleged in an earlier pleading into the Third Amended Prisoner Complaint." *Id.* at p. 9.

---

[10] Magistrate Judge Prose noted that Plaintiff has filed multiple civil rights lawsuits in the District of Colorado: 19-cv-02279-CMA-NRN (closed Aug. 24, 2023); 19-cv-03084-CMA-NRN (closed Apr. 27, 2021); 19-cv-03533-CMA-NRN (closed Apr. 27, 2021); 20-cv-01051-CMA-NRN (closed Apr. 27 ,2021); 20-cv-01428-CMA-NRN (closed Apr. 27, 2021); and 21-cv-03207-CMA-SBP (pending).

[11] Plaintiff also mistakenly filed an Amended Complaint in this case that was meant for another case in the District of Colorado (23-cv-03122-PAB-TPO). The Court ignores that mistakenly filed Complaint. ECF 15.

On April 18, 2024, Plaintiff filed his Third Amended Complaint (TAC). ECF 19.

*Partial Motion to Dismiss [ECF 41]*

On November 25, 2024, the CDOC Defendants filed a Partial Motion to Dismiss [ECF 41]. The Motion seeks dismissal of all Defendants as to Claim One (Eighth Amendment) and Defendant Long as to Claim Two (Retaliation).[12] ECF 41 at p. 3. Regarding Claim One, Defendants first argue that Plaintiff fails to adequately allege an Eighth Amendment claim against any Defendant. *Id.* at pp. 5-6. They note that "not every injury suffered by one inmate at the hands of another translates into constitutional liability for prison officials." *Id.* at p. 5 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Focusing on the subjective prong of the analysis, Defendants note that deliberate indifference requires "more than negligence, or even gross negligence." *Id.* at p. 6 (citing *Wyatt v. Gibson*, 128 F. App'x 85, 86 (10th Cir. 2005)).

CDOC Defendants next argue that in Claim One, Plaintiff fails to demonstrate any personal involvement by Defendants Quinlin, Long, Wallace, and Weaver.[13] *Id.* at p. 7. According to CDOC Defendants, Plaintiff fails to allege that these five individual Defendants were present during the attack or that "they had any specific knowledge that Wilson was at risk of being hurt by the unnamed inmate." *Id.* Defendants go on to argue that Plaintiff failed to allege that Defendants Reed and Norris were deliberately indifferent. *Id.* at p. 9.

As it relates to Claim Two, Defendants assert that Plaintiff failed to allege Defendant Long's personal participation. *Id.* at pp. 10-11. Finally, Defendants argue that all Defendants are

---

[12] Noting Magistrate Judge Prose's statements in prior orders, ECFs 14 at p. 8; ECF 18 at p. 8, Defendants do not contest that Plaintiff has pleaded a sufficient retaliation claim against Defendants Wallace, Weaver, Quinlin, Reed, and Norris.

[13] Defendants do not contest that the TAC sufficiently alleges personal involvement on behalf of Defendants Reed and Norris.

entitled to qualified immunity because Plaintiff fails to demonstrate a violation of clearly established federal constitutional rights. *Id.* at p. 12.

In Plaintiff's Reply, as it relates to Claim One, he explains that he had been in Protective Custody, or PC, "a condition that renders him common prey to assault from all inmates." ECF 43 at p. 1. Plaintiff also notes that "so many P.C. inmates had already been assaulted," which proves the situation to be one of "excessively high risk." *Id.* Plaintiff also notes that "[e]ach defendant knew that Wilson was from protective custody, as he told each, and they were aware from knowing Wilson for 3 years." *Id.* Plaintiff also notes that he "had told each defendant that the Predator had threatened him and would follow through." *Id.* These are all new factual allegations that are not found in Plaintiff's TAC.

As it relates to Claim Two, Plaintiff only notes that Defendant Long "personally responded to Wilson's grievances of attacks and failed to change policy, then threatened plaintiff . . ." *Id.* at p. 2.

In Defendants' Reply, they note that Plaintiff's new factual allegations are not properly considered as it relates to dismissal of Claims One or Two, as the Court must confine its analysis to the claims made in the TAC. ECF 44 at pp. 3-7. Defendants also reassert the claim of qualified immunity. *Id.* at pp. 7-8.

## LEGAL STANDARDS

### I.  Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a

plaintiff's complaint or construct a legal theory on the plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit has interpreted this rule to mean that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## II.    Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss claims for lack of "subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal court jurisdiction is limited to "cases" and "controversies" by Article III of the United States Constitution. U.S. Const., Art. III, § 2; *Susan B. Anthony List v. Diehaus*, 573 U.S. 149, 157 (2014). "The doctrine of standing gives meaning to these constitutional limits," *Susan B. Anthony List*, 573 U.S. at 157 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), and a plaintiff must establish standing to satisfy the "case" and "controversy" requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted). To do so, a plaintiff "must show that [he] has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper*, 568 U.S. at 409) (internal quotations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). Standing must be established separately for each claim and each form of relief

sought. *See DaimlerChrysler Corp*, 547 U.S. 332, 352-53 (2006); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). A court lacking jurisdiction must dismiss a case when it "becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Even if the parties do not raise the question of lack of jurisdiction, "it is the duty of the federal court to determine the matter sua sponte." *Id.* (citing *Atlas Life Insurance Co., v. W.I. Southern, Inc.*, 306 U.S. 563 (1939); *Continental Mining and Milling Co. v. Migliaccio*, 16 F.R.D. 217 (D. Utah Aug. 31, 1954)). As a question of subject-matter jurisdiction, lack of standing requires dismissal under Rule 12(b)(1). *See United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017) (jurisdiction is a threshold question); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (standing is jurisdictional).

### III.    Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions "test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claims are plausible when the well-pleaded facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When considering a 12(b)(6) motion, a court must "presume[] all of plaintiff's factual allegations are true and construe[] them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109.

However, the court need not accept as true mere legal conclusions asserted with "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). If a plaintiff's factual allegations have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### IV. Consideration of Information Outside the Complaint

While consideration of a Rule 12(b)(6) motion is generally limited to the four corners of the Complaint, there are three exceptions. First, "attached exhibits and documents incorporated into the complaint by reference" may be considered. *See Denver Health & Hosp. Auth. v. Beverage Distribs. Co.*, 843 F. Supp. 2d 1171, 1177 (D. Colo. 2012) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)) (internal quotation marks omitted). Second, the Court may take judicial notice of information, "such as certain documents contained in the public record." *See*

*Sweesy v. Sun Life Assur. Co. of Canada*, 643 F. App'x 785, 789 (10th Cir. 2016) (unpublished) (first citing *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015); and then citing *Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir. 2006)). Third are "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

"[F]acts raised in a response brief cannot be used to survive a Rule 12(b)(6) motion. S*ee Farris v. Stepp*, No. 20-cv-02346-DDD-NYW, 2021 WL 5200210, at *5 (D. Colo. Nov. 9, 2021) (citing *Warad W., LLC v. Sorin CRM USA Inc*., 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) (citation omitted)). Plaintiff may not "effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss." *In re Qwest Communications Intern., Inc*., 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).

<u>**ANALYSIS**</u>

<u>**Claim I: Eighth Amendment (All Defendants)**</u>

The Eighth Amendment's prohibition of "cruel and unusual punishment" imposes duties upon prison officials to protect prisoners and ensure that their basic needs are adequately met. *Farmer*, 511 U.S. at 832. To proceed under an Eighth Amendment claim, Plaintiff must plausibly plead that a prison official's deliberate indifference to his safety created an inhumane condition of confinement in violation of the Eighth Amendment's Cruel and Unusual Punishment clause. *Id*. Specifically, as relevant to this case, the Eighth Amendment mandates that prison officials provide "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Included in this mandate is the "obligation to take reasonable measures to guarantee the

safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Prison officials must also take reasonable measures to protect inmates from fellow inmates. *Farmer*, 511 U.S. at 833-34. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses to society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

However, an Eighth Amendment violation does not arise from every incident of violence perpetrated by one prisoner against another. *Id.* And deliberate indifference is a higher standard than "either simple negligence or heightened negligence." *Rider v. Werholtz*, 548 F. Supp. 2nd 1188, 1195 (D. Kan. 2008) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-410 (1997)). Eighth Amendment liability requires "'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).

To hold a prison official liable for denying humane conditions of confinement, the prisoner must establish two requirements: one objective, one subjective. *Farmer*, 511 U.S. at 847; *Barney*, 143 F.3d at 1310. The objective component is met when the alleged deprivation is "sufficiently serious," and deprives the inmate of the minimal civilized measures of life's necessities. *Barney*, 143 F.3d at 1310. (citations and quotations omitted); *see Whitley v. Albers*, 475 U.S. 312, 319-20 (1986) (discussing the wantonness of conduct necessary to meet the objective standard); *see also Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991) (applying *Whitley*'s wantonness characterization in a condition of confinement case). If an inmate claims a prison official's conduct failed to prevent them from harm, "the inmate must show that he is incarcerated under conditions posing a *substantial* risk of serious harm." *Farmer*, 511 U.S. at 834 (citation omitted) (emphasis added).

For the subjective component to be met, the prison official must have acted with "deliberate indifference" to the inmate's health or safety. *Id.* (citations omitted). An official's conduct is deliberately indifferent if they are subjectively "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," and the official drew the inference. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, and a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious." *Farmer*, 511 U.S. at 826. But "prison officials may not be held liable if they prove they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Id.* If subjective knowledge is established, the official must also have disregarded the risk by failing to take reasonable measures to prevent the harm. *Id.* at 847. And even those prison officials that "actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the ultimate harm was not averted." *Id.* at 844.

In evaluating Plaintiff's Eighth Amendment claim, the Court separates the seven Defendants into three groups: 1) Defendant Norris and Defendant Reed, and 2) Defendants Long, Wallace, Weaver, and Quinlin, and 3) Defendant Stancil. Although Plaintiff's TAC fails to plausibly state an Eighth Amendment claim and fails to establish redressability for the injunctive relief sought from Defendant Stancil in his official capacity, at this stage, the Court recommends different dispositions based whether Plaintiff's claims against certain Defendants could be cured by future amendments.

### *Defendants Reed and Norris*

In the TAC, Plaintiff specifically alleges that Defendants Reed and Norris were present for the April 12, 2022 assault, and he describes their actions leading up to the assault as well. ECF 19 at pp. 7-8. They first informed Plaintiff that to stay out in the day room, he had to sit at a table with two individuals whom Plaintiff labels as "white supremacists." *Id.* These two Defendants assured Plaintiff that another certain inmate was not coming out of his cell. *Id.* At this time, Plaintiff was "chained to the table," *id.* at p. 7, although Plaintiff does not allege that these Defendants chained him there. Then Defendants went to a cell, "let the inmate loose and he struck inmate Wilson with the steel weapons"[14] causing serious injury to Plaintiff. *Id.* at p. 8.

#### a) Subjective Component

As it relates to what Defendants Reed and Norris were plausibly aware of, Plaintiff's TAC is less than clear. Plaintiff makes a number of statements about the knowledge of *all Defendants*. *See e.g., id*. at p. 7 ("the defendants spread a rumor that the plaintiff was a 'snitch!'"); p. 8 ("The defendants were each aware of a high rate of prisoner-on-prisoner violence that was serious and systematic . . ."). Those statements fail to state with any particularity "*who* is alleged to have done *what* to *whom*." *See Robbins v. Oklahoma*, 519 F. 3d 1242, 1250 (10 Cir. 2008).[15] This specificity is crucial at the pleading stage "to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state." *Id.* (citing

---

[14] Plaintiff earlier referred to the weapons as being "handcuffs, chains and a steel lock." ECF 19 at p. 7.

[15] In yet other examples, Plaintiff alleges that "[t]he assault was caused by the intentional conduct of defendants Reed, Norris, Long, Weaver, Quinlin, Wallace, and Markham," and that Defendants "set the plaintiff up" and "were aware that specific inmates were threatening to assault the plaintiff . . ." *Id.* at pp. 7-8.

*Twombly*, 550 U.S. at 565). As discussed in *Guion v. Spurlock*, "providing a list of Defendants involved in various allegations . . . is not enough to meet the personal participation requirement and is precisely the type of group allegations the Tenth Circuit disapproves." No. 14-cv-00391-LTB-MEH, 2015 WL 394020, at *8 (citing *Robbins*, 519 F.3d at 1250).

This Court is mindful of *Benefield v. McDowall*, a case where the Tenth Circuit affirmed a district court's denial of a motion to dismiss in a similar set of circumstances because "labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate." 241 F.3d 1267, 1271 (10th Cir. 2001) (citing *Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996)). This Court finds *Benefield* distinguishable because that plaintiff's complaint targeted a specific defendant for specific conduct. He brought the claim against the one correctional officer who: "labeled him a 'snitch' to other inmates, conspired to have him attacked or killed by other inmates because of his reputation as a snitch, and filed a false incident report resulting in his discipline and placement in administrative segregation." *Id.* at 1269-70. Other courts have allowed complaints to proceed when more specific, focused allegations are made. *See Wilson v. Tolentino*, No. 19-cv-03084-CMA-NRN, 2020 WL 6119541, at *4 (D. Colo. Apr. 9, 2020) (denying motion to dismiss but citing to specific portions of plaintiff's complaint where plaintiff "makes specific allegations against each of the named defendants.");[16] *see also Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) (unpublished) (one specific guard disclosed plaintiff was a child molester to plaintiff's cell-mate directly); *Hammond v. Nagle*, No. 18-cv-00579-RBJ-NYW, 2019 WL 652596, at *3 (D. Colo. Feb. 15, 2019) (one specific guard spread the rumor that resulted in Plaintiff's assault). However, Plaintiff may not proceed with a shotgun

---

[16] In that lawsuit, also filed by Plaintiff, he made much more specific allegations than those made in the present TAC. *See* 19-cv-03084-CMA-NRN at ECF 1 ¶¶ 6-8, 10-20.

approach to establish deliberate indifference. *Cf. Brown*, 265 F. App'x at 736 (applying the standard set in *Benefield* but only when plaintiff "provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards." (citations omitted)).

The Court also takes as true Plaintiff's allegation that Defendant Norris stated: "that's what you get" after the assault. This statement could possibly suggest that Defendant Norris purposefully coordinated an attack on Plaintiff. However, Plaintiff conclusory accusations that Defendants "set him up" or intended him harm are not considered and are unsupported by any factual support. For example, the TAC is devoid of any reason to infer that Defendants Norris and Reed wanted the incident to occur, that Defendants knew that the events would transpire as they did, or that Defendants actively instigated the assault. Plaintiff's bare accusations that Defendants planned an attack against him are not enough. *See Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citation omitted)).

    *b)  Objective Component*

Plaintiff alleges that he was in danger for the following reasons:

1) The spread of confidential information from his case file, specifically that he was in custody for "killing of a Sureno's in a fist fight." ECF 19 at p. 7.

2) The spread of the rumor that Defendant was a "snitch" or a "rat." *Id.* at pp. 7-8.

3) The "high rate of prisoner-on-prisoner violence that was serious and systematic." *Id.* at p. 7.

Plaintiff's allegations, taken as true, likely are sufficient on the objective side of the analysis, as his allegations demonstrate that he was "incarcerated under conditions posing a *substantial risk of serious harm*." *Benefield*, 241 F.3d at 1272 (citing *Farmer*, 511 U.S. at 834) (emphasis in original). However, a plaintiff's allegations of a substantial risk of serious harm based on statements from the rumor mill may not meet the objective standard when there is no causal link to the harm alleged.

*See Lane v. Klingler,* 25 F. App'x 781, 783 (10th Cir. 2001) (unpublished) (plaintiff's argument "that he was in danger because of his status as a sex offender also cannot support his § 1983 claim, as he cannot establish that he was attacked because he was a sex offender"); *Hunsaker v. Jimerson*, No. 08-cv-01479-REB-MJW, 2010 WL 3323415, at *11 (D. Colo. July 9, 2011) (objective component not met when plaintiff pleaded "merely conclusory allegations without supporting factual averments").

The Court need not make a finding on whether Plaintiff has met the objective prong for two reasons. First, Defendants do not argue that Plaintiff failed to plead the objective component. And second, even if Plaintiff sufficiently pleaded this prong, objectively inhumane prison conditions, without the subjective component, are not sufficient for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 838 (citing *Wilson v. Seiter*, 501 U.S. 294, 299-302 (1994)).

Therefore, based on Plaintiff's failure to satisfy the subjective component in particular, Plaintiff fails to plead a claim for deliberate indifference, based on a failure to protect theory, against Defendants Reed and Norris. The Court's review of the full record, including some of the information presented by Plaintiff in the prior iterations of the TAC as well as the additional information provided in his Reply, suggests that there is more to the story regarding the danger that the attacking inmate posed to Plaintiff and the role the Defendants played in the assault than what is provided in the TAC. However, the Court must only consider the well-pled, non-conclusory allegations contained in Plaintiff's TAC. Those allegations do not plausibly exceed the threshold of negligence and fail to establish the conduct of Defendants Reed and Norris with particularity, which is insufficient for an Eighth Amendment violation under § 1983. *Farmer*, 511 U.S. at 835.  Thus, this Court recommends that Claim One of the Complaint be dismissed as it relates to Defendants Reed and Norris.

**Defendants Long, Wallace, Weaver, and Quinlin**

Even after receiving Magistrate Judge Prose's clear instruction regarding the pleading requirements in lawsuits involving multiple defendants,[17] Plaintiff's Eighth Amendment claim against the remaining Defendants, sued in their individual capacities, for failure to protect has less detail to connect these Defendants to the alleged assault than the claim against Defendants Reed and Norris does. First, Plaintiff does not allege that any of these Defendants were present at the time of the alleged attack on April 12, 2022. Second, other than by conclusory statements that apply to all or most Defendants, which the Court must disregard, Plaintiff fails to allege that any particular Defendant was aware of any particular piece of information concerning the risks Plaintiff faced while incarcerated at that time.

### a)  Subjective Component

As to the subjective component, just as with Defendants Reed and Norris, Plaintiff's TAC fails to allege sufficient facts to demonstrate that any of these Defendants were aware of an excessive risk and acted in purposeful disregard for that risk. In conclusory fashion, Plaintiff's TAC alleges that Defendants acted with "malicious intent" and that the "assault was caused by the intentional conduct of defendants Reed, Norris, Long, Weaver, Quinlin, Wallace, and Markham." ECF 19 at p. 7. However, Plaintiff does not *show* how that might be true.

---

[17] In her Order on March 27, 2024, Magistrate Judge Prose stated: [i]n a lawsuit involving multiple defendants, it is 'particularly important' that the plaintiff makes clear 'exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.'" ECF 18 at p. 6 (citing *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (additional internal citations and quotations omitted)). U.S. Magistrate Judge N. Reid Neureiter issued a similar admonishment in one of Plaintiff's other lawsuits. *Wilson v. Long*, No. 21-cv-03207-CMA-NRN, 2022 WL 2981834, at *9 (D. Colo. Jul. 28, 2022) ("[I]t is immediately apparent that Mr. Wilson's deliberate indifference claim fails as to certain Defendants for lack of personal participation.").

Plaintiff does allege that all of the Defendants except Defendant Long "were going around calling me a 'Snitch!'" ECF 19 at p. 7. But Plaintiff does not allege that Defendants did so *in front of other inmates* or that they "*were aware that labelling an inmate as a 'snitch' or a 'narc' puts that inmate at risk.*" *See Wilson*, 2020 WL 6119541, at *6 (citation omitted). Plaintiff also alleges that he sent "dozens of pleas for help and letters complaints to Long and Wallace," ECF 19 at p. 8, but does not clarify the substance of the pleas/letters.

Plaintiff's failure to attribute any specific action to any specific Defendant is fatal to his Eighth Amendment claim against these Defendants. Personal involvement or participation is required to establish deliberate indifference. *Wilson*, 2022 WL 2981834, at *9; *Coit v. Zavaras*, 173 F. Supp. 3d 1199, 1211 (D. Colo. 2016) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)). And "[s]upervisor status alone is insufficient to support liability;" "[a] supervisor is not liable under § 1983 for the actions of a subordinate unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise." *Id.* (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)).

**<u>Claim II: First Amendment Retaliation (Defendant Long)</u>**

To state a First Amendment retaliation claim against a governmental official, a plaintiff must allege:

> (1) that he was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even

where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149
F.3d 1140, 1144 (10th Cir. 1998) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)).

While this Court agrees with Plaintiff that the filing of grievances would satisfy the first
*Shero* element, Plaintiff's failure to provide non-conclusory support for the other two elements
means that his First Amendment Retaliation claim against Defendant Long must fail. First,
Plaintiff fails to allege any specific, non-conclusory, retaliatory action committed by Defendant
Long, as opposed to the Defendants as a whole, that would constitute an "adverse action." The one
independent reference to Defendant Long is that "on several occasions, defendants Long and
Wallace signed off to have Wilson violently assaulted while in his cell for filing grievances . . ."
ECF 19 at p. 9. This allegation is conclusory, provided without any explanation of timing and
specificity about how Defendant Long, as opposed to Defendant Wallace or another person,
coordinated the assaults or how Plaintiff came to learn that information. "Where a complaint pleads
facts that are merely consistent with a defendant's liability, it stops short of the line between
possibility and plausibility of entitlement to relief." *VDARE Foundation v. City of Colorado
Springs*, 449 F. Supp. 3d 1032, 1040 (D. Colo. 2020) (quoting *Ashcroft v. Iqbal*, 550 U.S. 662,
678 (2009)) (internal quotations omitted). Therefore, the Court need not treat this accusation as
true. Without it, Claim Two of Plaintiff's TAC is silent as to Defendant Long altogether and fails.

Further, the lack of specificity and detail also plague the third element: that retaliatory
motives were the "but for" cause of Defendant Long's actions. *Peterson*, 149 F.3d at 1144.
Plaintiff's mere conclusory statements are not sufficient, even at the pleading stage. *Banks v.
Katzenmeyer*, 645 F. App'x 770, 772-73 (10th Cir. 2016) (affirming dismissal of claim against a
defendant where allegations in support of retaliatory motive were "generic and unspecific").

### Qualified Immunity

Defendants further argue that they are entitled to qualified immunity for both claims against all Defendants. ECF 41 at pp. 12-14. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269, *2 (D. Colo. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "A court should resolve questions of qualified immunity at the earliest possible stage of litigation." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)).

When qualified immunity is raised, it "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense, but an immunity from suit. *Pearson*, 555 U.S. at 231 (citations and quotation marks omitted). There is no heightened pleading standard for plaintiffs facing a qualified immunity challenge though. *Id.* (citing *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001)).

At the motion to dismiss stage, qualified immunity may "spare [government officials] the ordeal of discovery if the complaint fails to allege a constitutional violation or if the alleged violation was not clearly established." *Robbins*, 519 F.3d at 1249 (citing *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). Plaintiffs must plead sufficient factual allegations, taken as true, to plausibly overcome the qualified immunity hurdle. *See id.*; *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (discussing the purpose of qualified immunity in protecting state officials

from liability and the "heavy burden" plaintiffs must meet to overcome qualified immunity at summary judgment). The order of analysis for the two-pronged qualified immunity inquiry is within the district court's discretion. *Al-Kidd*, 563 U.S. at 735 (citing *Pearson*, 555 U.S. at 236).

Because this Court finds Plaintiff's TAC fails to plead an Eighth Amendment violation against any Defendant or a First Amendment retaliation claim against Defendant Long, the Plaintiff has not met his burden on the first prong of the qualified immunity analysis. As a result, there is no need for this Court to reach the second prong of the qualified immunity analysis at this time.[18]

### Official Capacity Claims against Defendant Stancil

The grounds for Plaintiff's official capacity claims against Defendant Stancil are unclear, but the Court liberally construes the TAC as seeking injunctive relief based on the alleged Eighth and First Amendment violations. In Defendant Stancil's official capacity as the CDOC Executive Director, the claims operate as a suit against the CDOC for injunctive relief based on CDOC employees' constitutional violations. *See Thompson v. Williams*, No. 21-cv-00602-RM-KLM, 2022 WL 462091, at *6 (D. Colo. Feb. 14, 2022). Plaintiff requests the following injunctive relief: (1) "an injunctive order against defendant[] . . . Dean Williams . . . arrange [sic[ for imediate [sic] O.I.G. 'Professional Standards Investigation' to include polygraphs"; (2) "immediately arrange for plaintiff's needs for physical therapy, mental health evaluation, follow-up mental health and medical treatments" from providers specializing in treating his (unspecified) injuries, PTSD, and traumatic brain injuries; and (3) "expunge plaintiff's disciplinary convictions described as assaults,

---

[18] The Court would note for the Parties' benefit that in *Benefield*, the Tenth Circuit found that when a correctional officer labeled the plaintiff a snitch, that label was communicated to other inmates, and the correctional officer was aware of the impact of such a statement, "clearly established law provides that [defendant] violated Plaintiff's constitutional rights under the Eighth Amendment." 241 F.3d at 1271.

[illegible], in order for plaintiff to proceed in this cause of action." ECF 19 at p. 12. Although it is

unspecified, the Court assumes that all three requests for injunctive relief are sought against the

CDOC. Defendants do not move to dismiss the official capacity claims and make no mention of

these claims in their Motion. *See generally* ECFs 41; 44. Nevertheless, the Court finds that Plaintiff

lacks standing because his requested injunctive relief would not redress his injuries, and as a result,

the Court recommends *sua sponte* dismissal of these claims without prejudice.

### Redressability

Article III standing requires Plaintiff to demonstrate (1) he suffered an injury-in-fact, (2)

the injury is fairly traceable to the defendant's challenged conduct, and (3) that the injury will be

redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Of importance here is the last

element: redressability. In assessing the redressability requirement for constitutional standing, the

Court must consider the "relationship between 'the judicial relief requested' and the 'injury'

suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted). A plaintiff must

"demonstrate a substantial likelihood that the relief requested will redress [their] injury in fact."

*Nova Health Systems*, 416 F.3d at 1158 (citing *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 875

(10th Cir. 1992)).

None of Plaintiff's requested injunctive relief would redress either his Eighth Amendment

failure to protect claim or his First Amendment retaliation claim or would necessarily impact the

conditions of his confinement. Even if Defendant Stancil were required to initiate an "O.I.G.

Professional Standards Investigation," there is no logical basis provided in the TAC to suggest that

such investigation would necessarily affect Plaintiff, much less remedy his injuries from the assault

or retaliatory actions. To the extent Plaintiff seeks forward-looking relief, i.e., injunctive relief to

prevent future injuries, Plaintiff's TAC does not establish that he "face[s] a real and immediate

threat of repeated injury," *Murthy*, 603 U.S. at 58, under either the Eighth or First Amendment. For example, Plaintiff does not allege continuing constitutional violations or seek specific injunctive relief to remedy any such violations. *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (injunctive relief requires demonstrating a future, likely injury); *Facio v. Jones*, 926 F.2d 541, 544 (10th Cir. 1991).

His second request, that certain medical treatments and evaluations be arranged, are wholly unrelated to this action, which raises no medical deliberate indifference claims or allegations. Granting this relief also could not redress any injuries alleged.

Even more unclear is the connection between his "disciplinary convictions" and his claims. There is no indication or allegation that Defendants are preventing him from accessing the Courts based on his disciplinary convictions, and the Court can discern no possible way that this sought after relief would redress any constitutional violations alleged in the TAC.

Although pleading Plaintiff's official capacity claims against Defendant Stancil requires only that employees of the CDOC violated Plaintiff's constitutional rights, *see Thompson*, 2022 WL 462091, at *6, Plaintiff nevertheless fails to establish standing because none of his requested injunctive relief would redress his injuries for any alleged constitutional violations.

### Dismissal With/Without Prejudice

The Federal Rules of Civil Procedure and the Tenth Circuit recommend that efforts be made to allow parties to amend, especially pro se plaintiffs, to ensure that justice is served. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires."); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990). However, "a dismissal under Rule 12(b)(6) for failure to state a claim is generally *with* prejudice." *Higgins v. City of Tulsa, Oklahoma*, 103 F. App'x 648, 651 (10th Cir.

2004) (unpublished) (emphasis in original). And when allowing a plaintiff to amend would be futile, likely leading to subsequent dismissal, a dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). When a plaintiff has had prior opportunities to amend a complaint and still cannot state a valid claim, courts will dismiss claims with prejudice. *See e.g., In re Frontier Airlines* Litigation, No. 20-cv-01153-PAB-KLM, 2022 WL 602870, at *3 (D. Colo. Mar. 1, 2022) (noting plaintiff's opportunity to amend the complaint following defendant's motion to dismiss); *Cupat v. Palantir Technologies, Inc.*, No. 22-cv-02384-GPG-SBP, 2025 WL 1141534, at *19 n.23 (D. Colo. Apr. 4, 2025) (noting Plaintiffs "have already amended their Complaint multiple times.").

As to Plaintiff's Eighth Amendment claims against Defendants Reed and Norris, the Court recommends dismissal **without prejudice**. As to Plaintiff's Eighth Amendment claims against all other Defendants, the Court recommends dismissal **with prejudice**. As to the First Amendment Retaliation Claim against Defendant Long, this Court recommends it be dismissed **with prejudice**. For Plaintiff's official capacity claims for injunctive relief against Defendant Stancil, these claims should be dismissed **without prejudice** for lack of jurisdiction.[19]

As it relates to the claims for which this Court recommends dismissal with prejudice, the Court notes that Plaintiff has had multiple opportunities to amend the Complaint. *See* ECF 1, 12, 16, 19. Each time Magistrate Judge Prose has advised Plaintiff of the deficiencies relating to each claim. *See* ECF 8, 14, 18. The same deficiencies, as to these claims, remain. The Court believes at

---

[19] Because standing is a jurisdictional issue, "dismissal with prejudice for lack of standing is inappropriate." *Brereton*, 434 F.3d at 1216 (citation omitted); *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973).

this stage of the litigation—nearly two years after the litigation began and after three amendments to the original Complaint—that amendment would be futile.

Plaintiff's Eighth Amendment claims against Defendants Reed and Norris are different. As to those two Defendants alone, Plaintiff's Eighth Amendment claims are pleaded with some factual specificity regarding their personal involvement, so amendment may nudge these claims from conceivable into the category of plausible. *Iqbal*, 556 U.S. at 680. And since Plaintiff asserts numerous, additional factual allegations in his prior complaints and Reply, facts that were not considered for purposes of the present motion but that could be part of an amended pleading against the remaining two Defendants on Claim One, this Court finds that amendment may not be futile. While the Court is mindful of Magistrate Judge Prose's directive, ECF 18 at p. 9, the Court nonetheless finds dismissal without prejudice for Claim One as to Defendants Reed and Norris to be appropriate.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully **RECOMMENDS**[20] that

---

[20] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the Magistrate Judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review Magistrate Judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of Magistrate Judge's order by failing to object to those portions) *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that

Defendant's Partial Motion to Dismiss [ECF 41] be **GRANTED**:[21]

1) As to Plaintiff's Eighth Amendment claim (Claim One) against Defendants Reed and Norris, this Court recommends that it be **DISMISSED WITHOUT PREJUDICE.**

2) As to Plaintiff's Eighth Amendment claim (Claim One) against Defendants Long, Wallace, Weaver, and Quinlin, this Court recommends that it be **DISMISSED WITH PREJUDICE**.

3) As to Plaintiff's First Amendment claim against Defendant Long, this Court recommends that it be **DISMISSED WITH PREJUDICE**.

4) As to Plaintiff's Official Capacity claims against Defendant Stancil, this Court recommends that they be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

As it relates to Plaintiff's claims against Defendants Markham and Mental Health (Unknown Supervisor), since no Motion to Dismiss has been filed on their behalf, those claims remain pending. Based on the allegations in the TAC and the Court's statements herein regarding Defendants Stancil, Long, Wallace, Weaver, and Quinlan, however, which would apply with equal force to these two Defendants, Plaintiff should seriously consider whether to include them in any amended complaint.

---

plaintiffs waived their right to appeal certain portions of Magistrate Judge's orders by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the Magistrate Judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

[21] This Court recommends that Plaintiff be given 30 days to file a motion seeking leave to file a Fourth (**_and final_**) Amended Complaint in compliance with Fed. R. Civ. P. 8 and this Recommendation.

The Clerk of Court is **DIRECTED** to mail a copy of this Recommendation to

     Terance D. Wilson
     #117681
     Sterling Correctional Facility
     P.O. Box 6000
     Sterling, CO 80751

DATED at Denver, Colorado, this 12th day of August, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
U.S. Magistrate Judge